case to the previous cases, and holds that the libel is properly filed in the name of Ruckman. Christopher v. The Transit [unreported.] That, although the libel is open to criticism, yet it is not fatally defective. The objection that it does not state in what way the Ney endeavored to avoid the collision is hardly tenable, as the only way she could attempt to do so, in the situation she was in when the Five Boys was discovered, was by putting her helm hard up. The place is stated to be in Hampton Roads, but there is nothing in the case which requires the exact locality to be particularly stated. The ground on which the libelant seeks to recover, viz. that the Five Boys lay in the track of vessels, without a light, was stated, and, although in a different case the scantiness of the description in the libel might be fatal, it is sufficiently explicit to sustain this suit. That, on the evidence, the Ney had a lookout, and would have discovered the Five Boys if she had had a light up. That the Five Boys had no light visible, and no one on deck, the crew having all gone below. That, if a vessel will anchor in a much-frequented spot like this, where it is morally certain that other vessels will be seeking the same shelter, she should have some one on watch to keep her light burning. That the Five Boys is therefore in fault, and liable in this action. That the Ney should have shortened sail and slackened her speed in entering an anchorage ground like this. If she had done so, while she might not have avoided the collision, the extent of the damage caused by it would naturally have been diminished. She was therefore in fault in a particular, the natural tendency of which was to enhance the damages suffered by her. That the case is therefore a proper one for apportioning the damages, a moiety of which must be borne by each vessel. Decree accordingly, with an order of reference.

RUCKMAN (MOTT v.). See Case No. 9,881.

## Case No. 12,108.

### RUDD et al. v. PAINE et al.

[2 Cranch, C. C. 9.] [1]

Circuit Court, District of Columbia. July Term, 1810.

GARNISHMENT—APPROPRIATION BY DEBTOR—SUBSEQUENT ATTACHMENT.

If the defendant directs the garnishee to pay the debt due to the first attaching creditor, and he agrees to do so, a creditor who afterwards attaches, before the money is paid over, is not entitled to share it with the first attaching creditor.

Chancery attachment. Steer attached first for three hundred dollars; Miller had seven hundred and seventy-seven dollars in his hands. Before Rudd & Brush attached, Paine,

[1] [Reported by Hon. William Cranch, Chief Judge.]

(the principal debtor,) came to Alexandria and directed the attachment of Steer to be settled by Miller, and a calculation was made of the amount, and Miller agreed to pay over the balance to Paine. Rudd & Brush afterwards attached.

Mr. Swann, for plaintiffs, contended that Rudd & Brush had a right to participate with Steer in the amount intended to be paid to Steer, and that such is the practice in Virginia. The settlement between Miller and Paine does not affect the case. Miller was not bound by this verbal promise to pay the debt to Steer. He who asks equity must do equity.

Mr. Taylor, contra. This was the money of Steer, from the moment of the settlement between Paine and Miller; it was then appropriated, and agreed to by Mr. F. L. Lee, Steer's attorney, who only delayed the receipt of it till his return from a journey upon which he was then going. Steer might bring and support an action for money had and received.

THE COURT (THRUSTON, Circuit Judge. absent), Steer is to take the whole. A court of equity will consider that as having been done, which ought to have been done.

## Case No. 12,109.

### In re RUDDELL.

[2 Lowell, 124.] [1]

District Court, D. Massachusetts. May, 1872.

BANKRUPTCY — HUSBAND AND WIFE — SEPARATE CONTRACTS.

1. A married woman who comes to this state without her husband, he never having lived with her in this state, has full power to contract as if she were sole.

2. Section 29. Gen. St. c. 108. does not restrict or limit the power of such married women to contract within the bounds which the earlier sections of that chapter fix for women married and living with their husbands in this state.

3. Therefore, where such a married woman as first above mentioned contracted a debt as guarantor, and for the accommodation of a friend, the debt having no connection with her separate estate or with her trade, and became bankrupt, the debt was admitted to proof against her assets.

Application by a creditor, whose debt had been duly proved, to expunge the proof made by George W. Chipman & Co., upon certain promissory notes indorsed by the bankrupt [Jane Ruddell], and upon an account guaranteed by her. The allegations were, that the bankrupt was a married woman, and that the debts in question were contracted for the accommodation of her son-in-law. This was admitted; but it was further alleged and proved, in support of the claim, that the bankrupt was a native of Great Britain, was mar-

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]